44900 W. Bost-2 Rd
Apt. 1119
Maricopa, AZ 85139

✓ FILED          ___ LODGED
___ RECEIVED     ___ COPY

MAY 0 6 2026

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| DR. MARILYN WILEY, an individual, Plaintiff, v. AGAINST ABUSE, INC., an Arizona domestic non-profit corporation; GABRIELA MARKLEY, individually; PAT GRIFFIN, individually; BRIANDA GASTELUM-HERNANDEZ, individually; HOLLY (LAST NAME UNKNOWN), individually; and DOES 1-10, individually, Defendants. | Case No.: **CV-26-3153-PHX-DJH** <br> **COMPLAINT AND JURY DEMAND** (Fair Housing Act Violations; Arizona Fair Housing Act; Disability Discrimination; Race Discrimination; Sex Discrimination; Retaliation; Retaliatory Eviction; Negligence; Negligent Security; Intentional Infliction of Emotional Distress; Breach of Duty of Care; Defamation) |

## I. PRELIMINARY STATEMENT

1. This is a civil action brought by Dr. Marilyn Wiley, an African American woman with a disability and a survivor of domestic violence, against Against Abuse, Inc. ("Against Abuse"), a non-profit organization operating a domestic violence shelter in Maricopa, Arizona, and certain of its employees and agents who personally participated in the discriminatory, retaliatory, and harmful conduct described herein. Plaintiff seeks damages totaling $29,060,000.00.

2. Plaintiff was a resident of Against Abuse's women's shelter from approximately April 30, 2024, through June 17, 2024. During this period, Defendants subjected Plaintiff to discriminatory treatment on the basis of her race, sex, and disability; denied her services, resources, and basic necessities that were provided to other residents; failed to maintain adequate security at the shelter, resulting in the illegal repossession of Plaintiff's vehicle from the shelter grounds; accused Plaintiff of wrongdoing when she filed a grievance about her

mistreatment; and ultimately evicted Plaintiff from the shelter in retaliation for her protected complaint — forcing her out into the blazing Arizona summer heat while she was still wearing her night clothes, with no belongings, no transportation, nowhere to go, and nothing to eat.

3.Against Abuse, Inc. is a non-profit organization entrusted with the safety, care, and protection of vulnerable individuals fleeing domestic violence. Its mission, policies, and program services expressly commit it to providing shelter, support, and resources to those it serves. Defendants' conduct constituted a profound betrayal of that mission and a serious breach of their legal duties under federal and state fair housing laws, disability rights statutes, and common law.

## II. JURISDICTION AND VENUE

4.This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) because this action arises under federal statutes including the Fair Housing Act, 42 U.S.C. §§ 3601-3619, and 42 U.S.C. § 1981.

5.This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because the state claims arise from the same case or controversy as the federal claims.

6.This Court also has jurisdiction under 28 U.S.C. § 1343 for civil rights claims.

7.The amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff seeks damages totaling $29,060,000.00.

8.Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred in Pinal and Maricopa Counties, Arizona, within this judicial

the Maricopa Shelter. Markley is non-African American. Markley personally participated in the discriminatory treatment of Plaintiff, made retaliatory decisions including ordering Plaintiff's eviction, made false and defamatory statements about Plaintiff, and failed to take remedial action when Plaintiff reported discrimination. Markley is sued in her individual capacity.

13. Defendant Pat Griffin ("Griffin") is an individual who, at all relevant times, was employed by Against Abuse in a staff or supervisory capacity. Griffin personally participated in the mistreatment and discriminatory conduct directed at Plaintiff, and made untrue statements in written documents in an effort to cover up the abuse Plaintiff suffered. Griffin is sued in her individual capacity.

14. Defendant Brianda Gastelum-Hernandez ("Gastelum-Hernandez") is an individual who, at all relevant times, was employed by Against Abuse as Case Manager assigned to Plaintiff at the Maricopa Shelter. Gastelum-Hernandez is non-African American. Gastelum-Hernandez personally participated in the discriminatory treatment of Plaintiff and failed to provide Plaintiff with adequate case management services, resources, and support. Gastelum-Hernandez is sued in her individual capacity.

15. Defendant Holly (last name unknown) ("Holly") is an individual who, at all relevant times, was employed by Against Abuse as Community Advocate Case Manager at the Maricopa Shelter. Holly is non-African American. Holly personally participated in the discriminatory treatment of Plaintiff and failed to provide Plaintiff with adequate advocacy, services, and support. Holly is sued in her individual capacity. Plaintiff will amend this Complaint to state Holly's full legal name when ascertained through discovery.

16. Defendants Does 1 through 10 are individuals whose true names and capacities are currently unknown to Plaintiff. These Doe Defendants

include additional staff members, supervisors, administrators, and/or board members of Against Abuse who participated in, directed, authorized, or ratified the discriminatory and retaliatory conduct described herein, including but not limited to a staff member identified only as "Pat" at the Casa Grande facility. Plaintiff will amend this Complaint to state the true names and capacities of these Doe Defendants when ascertained.

## IV. FACTUAL ALLEGATIONS

### A. Background — Plaintiff Seeks Shelter from Domestic Violence

17. Prior to April 30, 2024, Plaintiff was a victim of domestic violence and sought refuge at a domestic violence shelter operated by Against Abuse, Inc.

18. Plaintiff is an African American woman with a disability who was in a vulnerable and desperate situation, having fled domestic violence and having limited resources, transportation, and support.

19. For over a month prior to being admitted, and including the same morning before she moved in that evening, Plaintiff was told by Against Abuse that the shelter was full to capacity and had no available rooms.

20. Despite being repeatedly told the facility was full, on the evening of April 30, 2024, Plaintiff was finally admitted and assigned to Room #1 at Against Abuse's shelter located at 45100 W. Ed Green Lane, Maricopa, Arizona 85139. Upon arrival, Plaintiff discovered that her assigned room was completely empty — contradicting the month-long representations that the facility was at capacity.

### B. Discriminatory Treatment from the Onset of Residency (April 30, 2024 — June 17, 2024)

21. Beginning immediately upon Plaintiff's arrival and continuing throughout her entire residency, Defendants subjected Plaintiff to different terms, conditions, privileges, services, and facilities of residency compared to other, non-African American and non-disabled residents.

22. Defendants delayed Plaintiff's intake appointment and required Plaintiff to fill out her own intake paperwork without assistance, contrary to standard intake procedures provided to other residents.

23. Defendants failed to collect important demographic information and information about Plaintiff's abuser during intake, which is critical safety information for a domestic violence survivor.

24. Defendants failed to inform Plaintiff of the services, resources, and programs that were available to her at the shelter, leaving her without knowledge of what support she was entitled to receive.

25. Defendants failed to provide Plaintiff with essential items that the program claims to provide to all residents, including but not limited to: bedding, toiletries, clothes, shoes, gas, transportation to health appointments, and emotional support and counseling resources.

26. While Plaintiff was recovering from a serious illness during her residency, Defendants failed to check on her for approximately three (3) days, leaving her alone and without medical attention or basic care during her recovery.

27. Defendants assigned Plaintiff to a bare, empty room, encouraged Plaintiff to isolate herself from other residents, and discouraged Plaintiff from leaving her room — effectively segregating and marginalizing Plaintiff within the shelter.

28. During house meetings, Defendant Markley, the Program Manager, announced policies discouraging socializing among participants and

explicitly prohibited residents from associating on a personal level with other program residents, providing transportation to others, or helping each other out.

29.Despite these announced prohibitions, Plaintiff personally observed multiple other program participants — who were non-African American — freely socializing, giving rides to each other, and sharing things without consequence or reprimand from staff.

30.When Plaintiff could not secure a ride from staff to a critical appointment, another program participant volunteered to drive Plaintiff. Both Plaintiff and the volunteer were immediately warned and reprimanded by Against Abuse staff about the "no ride sharing" policy — a rule that was selectively enforced against Plaintiff while being overlooked when non-African American residents engaged in the same behavior.

31.The selective enforcement of shelter rules and the denial of services, resources, and basic necessities to Plaintiff — while providing them to similarly situated non-African American and non-disabled residents — constitutes unlawful discrimination on the basis of race, sex, and disability.

### C. Failure to Secure the Shelter — Illegal Repossession of Plaintiff's Vehicle (May 9, 2024)

32.Against Abuse's shelter is a secured facility specifically designed to protect the safety and confidentiality of domestic violence survivors. The facility requires visitors to be buzzed in by the front desk attendant, and maintains security measures including a controlled gate to prevent unauthorized access.

33.On May 9, 2024, a repossession company known as On Point Recovery & Transport gained unauthorized access to the shelter's secured property by following behind a contracted landscaping

company through the security gate — without being buzzed in, without being detected, and without any staff member's knowledge.

34.Once inside the secured grounds, On Point's agents seized Plaintiff's vehicle along with all of Plaintiff's personal effects that were inside the vehicle — without notifying Plaintiff, without providing any paperwork, and without allowing Plaintiff any opportunity to retrieve her belongings.

35.The shelter's front office staff was not aware that Plaintiff's vehicle had been taken until after it was already gone, having been informed by the lawn company — not by On Point or by any security system.

36.When Plaintiff questioned the shelter staff about how a tow truck was able to breach the shelter's security gate, enter the grounds, hook up and tow a vehicle, and exit through the same secured gate without anyone seeing, knowing, or intervening, the staff dismissively told Plaintiff that it was "an isolated event" and that they had "no concerns about the facility's or the participants' safety."

37.Against Abuse offered Plaintiff no solutions, no resources, no assistance, and no remediation to help her overcome the significant loss of her vehicle and personal property — a devastating blow to a domestic violence survivor who depended on her vehicle for transportation, medical appointments, and eventual self-sufficiency.

38.Against Abuse's failure to maintain adequate security and its failure to detect or prevent the unauthorized entry of a tow truck onto a supposedly secured domestic violence shelter constitutes gross negligence that directly caused the loss of Plaintiff's vehicle and personal property, valued at approximately $54,000.00.

**D. Plaintiff Files a Grievance — and Faces Retaliation (June 10, 2024)**

39.On or about June 10, 2024, Plaintiff filed a formal grievance and report about the discriminatory conduct she had been subjected to throughout her residency, submitting her complaint to Defendant Markley, the Program Manager.

40.Rather than investigating Plaintiff's complaints, taking them seriously, or implementing remedial measures, Defendant Markley turned the tables on Plaintiff. Markley accused Plaintiff of isolating herself in her room and sleeping all day — the very isolation that Against Abuse's own staff had encouraged and imposed upon Plaintiff.

41.Defendant Markley then informed Plaintiff that she had one (1) week to relocate to another facility — effectively issuing a retaliatory eviction notice in direct response to Plaintiff's protected activity of filing a discrimination grievance.

42.Plaintiff requested an extension to remain at the shelter until she could secure alternative housing. Against Abuse denied Plaintiff's request for an extension, offering no assistance in finding alternative placement.

43.Markley and other Defendants failed in their lawful obligation to take remedial action to address Plaintiff's discrimination concerns, instead punishing Plaintiff for speaking out.

### E. Retaliatory Eviction — Forced Out in Night Clothes (June 17, 2024)

44.On or about June 17, 2024, Against Abuse evicted Plaintiff from the shelter.

45.Plaintiff was forced to immediately vacate the property while she was still wearing her night clothes.

46.Plaintiff was put out into the blazing Arizona summer heat — with temperatures regularly exceeding 110 degrees Fahrenheit during June

in Maricopa, Arizona — with only what belongings she could carry, no vehicle (having been illegally repossessed on May 9, 2024), no food, no money for transportation, and nowhere to go.

47. The eviction was carried out in a manner designed to humiliate and degrade Plaintiff, stripping her of her remaining dignity after she had already suffered the trauma of domestic violence, discriminatory treatment, and the loss of her vehicle.

48. Plaintiff believes, and therefore alleges, that her eviction was pretext for race-, disability-, and sex-based discrimination, and was retaliatory for Plaintiff having engaged in the protected conduct of filing a discrimination grievance on June 10, 2024.

49. Upon information and belief, Against Abuse did not subject other similarly situated non-African American, non-disabled residents to the same level of disrespectful conduct, contempt, targeted maltreatment, or retaliatory eviction.

## F. Defamatory Statements and Cover-Up

50. Following Plaintiff's complaints and eviction, individual Defendants — including Markley and Griffin — made untrue and defamatory statements in written documents regarding Plaintiff and the circumstances of her residency and eviction, in an effort to cover up the discriminatory treatment and abuse that Plaintiff suffered.

51. These written statements mischaracterized Plaintiff's conduct, falsely accused Plaintiff of rule violations, and attempted to justify the discriminatory treatment and retaliatory eviction after the fact.

52. These defamatory statements were published to third parties, including but not limited to other Against Abuse staff, administrators, board members, and potentially government agencies that oversee Against Abuse's grant funding.

53. The defamatory statements harmed Plaintiff's reputation, caused additional emotional distress, and interfered with Plaintiff's ability to secure housing and services from other providers.

### G. Prior Administrative Filings

54. Plaintiff filed a Housing Complaint of Discrimination with the Arizona Attorney General's Office, Civil Rights Division, under the Fair Housing Assistance Program (FHAP). The complaint, case number INT-2023-1177, was filed on or about December 12, 2024, alleging discrimination based on race, sex, disability, and retaliation/intimidation.

55. On March 3, 2026, Plaintiff sent a formal Notice of Intent to Pursue Legal Action to Against Abuse, Inc., at its mailing address of P.O. Box 10733, Casa Grande, AZ 85130, demanding a written response, a meeting within 14 days to explore resolution, appropriate corrective action, and compensation. Upon information and belief, Against Abuse failed to provide a satisfactory response within the stated timeframe.

### H. Damages Suffered by Plaintiff

56. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer the following damages:

a. Severe emotional distress, including anxiety, Post-Traumatic Stress Disorder (PTSD), depression, nightmares, fear, humiliation, loss of dignity, feelings of worthlessness, isolation, sleeplessness, and ongoing mental anguish;

b. Physical health consequences from the chronic stress of discrimination, including but not limited to exacerbation of pre-existing conditions, sleep disorders, weakened immune function, and stress-related illness;

c.Spiritual distress and crisis of faith resulting from being harmed by the very organization that claimed to protect her;

d.Loss of her vehicle and personal property ($54,000) due to negligent security;

e.Loss of housing and shelter — being put out onto the street in extreme heat with nowhere to go;

f.Loss of reputation from defamatory statements;

g.Loss of access to services, support, and resources she was entitled to as a shelter resident;

h.Re-victimization — being subjected to new trauma while seeking protection from prior trauma;

i.Financial hardship including costs of alternative housing, transportation, food, and necessities;

j.Interference with medical care and missed health appointments;

k.Loss of self-esteem, self-worth, and sense of safety.

---

## V. FIRST CAUSE OF ACTION
## FAIR HOUSING ACT — RACE AND SEX DISCRIMINATION
## (AGAINST ALL DEFENDANTS)
### (42 U.S.C. § 3604(B))

57.Plaintiff incorporates by reference each and every allegation contained in Paragraphs 1 through 56 as though fully set forth herein.

58.The Fair Housing Act, 42 U.S.C. § 3604(b), makes it unlawful to discriminate against any person in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

59.Against Abuse's shelter constitutes a "dwelling" under the Fair Housing Act, 42 U.S.C. § 3602(b), as it is a building designed and used as a residence by persons staying overnight.

60.Defendants discriminated against Plaintiff in the terms, conditions, privileges, services, and facilities of her residency at the shelter on the basis of her race (African American) and sex (female) by: denying her services provided to other residents; failing to provide essential items; delaying her intake; encouraging her isolation; selectively enforcing rules against her while allowing non-African American residents to violate the same rules; and evicting her.

61.Defendants' conduct constitutes a violation of 42 U.S.C. § 3604(b).

62.Plaintiff is entitled to compensatory damages, punitive damages, injunctive relief, and reasonable attorney's fees and costs pursuant to 42 U.S.C. § 3613(c).

---

## VI. SECOND CAUSE OF ACTION
## FAIR HOUSING ACT — DISABILITY DISCRIMINATION
### (AGAINST AGAINST ABUSE AND MARKLEY)
### (42 U.S.C. § 3604(F))

63.Plaintiff incorporates by reference each and every allegation contained in Paragraphs 1 through 62 as though fully set forth herein.

64.The Fair Housing Act, 42 U.S.C. § 3604(f), makes it unlawful to discriminate in the rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap (disability).

65.Plaintiff is a person with a disability as defined by federal law.

66.Defendants discriminated against Plaintiff because of her disability by: failing to provide reasonable accommodations; failing to check on her during a serious illness; failing to provide adequate support and resources appropriate for a disabled resident; and denying her the equal enjoyment of the shelter's services and facilities.

67.Defendants' conduct constitutes a violation of 42 U.S.C. § 3604(f).

68.Plaintiff is entitled to compensatory damages, punitive damages, injunctive relief, and reasonable attorney's fees.

---

## VII. THIRD CAUSE OF ACTION
## FAIR HOUSING ACT — RETALIATION
## (AGAINST AGAINST ABUSE AND MARKLEY)
### (42 U.S.C. § 3617)

69.Plaintiff incorporates by reference each and every allegation contained in Paragraphs 1 through 68 as though fully set forth herein.

70.42 U.S.C. § 3617 makes it unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of any right granted or protected by sections 3603, 3604, 3605, or 3606 of the Fair Housing Act.

71.On or about June 10, 2024, Plaintiff engaged in protected conduct by filing a grievance report about discriminatory treatment at the shelter.

72.Within days of Plaintiff's protected activity, Defendant Markley — acting on behalf of Against Abuse — issued Plaintiff a one-week eviction notice and denied Plaintiff's request for an extension.

73.On or about June 17, 2024, Against Abuse evicted Plaintiff from the shelter while she was still in her night clothes, forcing her out into extreme summer heat with nowhere to go.

74. There is a direct causal connection between Plaintiff's protected activity (the June 10 grievance) and the adverse action (the June 17 eviction). The temporal proximity — only seven days — is strong evidence of retaliatory intent.

75. Defendants' conduct constitutes unlawful retaliation in violation of 42 U.S.C. § 3617.

76. Plaintiff is entitled to compensatory damages, punitive damages, injunctive relief, and reasonable attorney's fees.

---

## VIII. FOURTH CAUSE OF ACTION
## ARIZONA FAIR HOUSING ACT — DISCRIMINATION AND RETALIATION
## (AGAINST ALL DEFENDANTS)
### (A.R.S. § 41-1491.19 ET SEQ.)

77. Plaintiff incorporates by reference each and every allegation contained in Paragraphs 1 through 76 as though fully set forth herein.

78. The Arizona Fair Housing Act, A.R.S. § 41-1491.19, prohibits discrimination in the sale, rental, or provision of services in connection with a dwelling based on race, color, religion, sex, disability (handicap), familial status, or national origin.

79. A.R.S. § 41-1491.24 prohibits retaliation against any person who has filed a complaint, testified, assisted, or participated in any manner in a proceeding under the Arizona Fair Housing Act.

80. Defendants violated the Arizona Fair Housing Act by discriminating against Plaintiff on the basis of race, sex, and disability, and by retaliating against Plaintiff for engaging in protected activity.

81.Plaintiff is entitled to compensatory damages, punitive damages, injunctive relief, and reasonable attorney's fees under A.R.S. § 41-1491.31.

---

## IX. FIFTH CAUSE OF ACTION
## RACE DISCRIMINATION IN CONTRACTS
## (AGAINST ALL DEFENDANTS)
## (42 U.S.C. § 1981)

82.Plaintiff incorporates by reference each and every allegation contained in Paragraphs 1 through 81 as though fully set forth herein.

83.42 U.S.C. § 1981 guarantees all persons the same right to make and enforce contracts as is enjoyed by white citizens, including the right to the full and equal benefit of all terms and conditions of the contractual relationship.

84.Plaintiff entered into a contractual or quasi-contractual relationship with Against Abuse for the provision of shelter, services, and support as a program participant.

85.Defendants discriminated against Plaintiff on the basis of her race in the performance, terms, conditions, and termination of this relationship by denying her services, treating her disparately, and evicting her.

86.Plaintiff is entitled to compensatory damages, punitive damages, and reasonable attorney's fees.

---

## X. SIXTH CAUSE OF ACTION
## NEGLIGENCE — FAILURE TO SECURE THE SHELTER
## (AGAINST AGAINST ABUSE)

87. Plaintiff incorporates by reference each and every allegation contained in Paragraphs 1 through 86 as though fully set forth herein.

88. Against Abuse owed Plaintiff — a domestic violence survivor residing at its shelter — a duty of care to maintain adequate security measures to protect Plaintiff's safety, person, and property while she was a resident.

89. Against Abuse breached this duty by failing to maintain adequate security at the Maricopa Shelter, allowing an unauthorized repossession company (On Point Recovery & Transport) to enter the shelter's secured grounds undetected by following behind a contracted landscaping company through the security gate on May 9, 2024.

90. As a direct and proximate result of Against Abuse's negligent security, Plaintiff's vehicle and all personal property inside the vehicle were seized without her knowledge, notice, or opportunity to intervene.

91. Plaintiff's damages from the negligent security breach include loss of her vehicle, loss of personal property, loss of transportation, missed medical appointments, emotional distress, and the ongoing consequences of being left without a vehicle as a domestic violence survivor in a shelter, totaling $54,000.00.

---

## XI. SEVENTH CAUSE OF ACTION
## NEGLIGENCE — FAILURE TO PROVIDE ADEQUATE CARE
## (AGAINST ALL DEFENDANTS)

92. Plaintiff incorporates by reference each and every allegation contained in Paragraphs 1 through 91 as though fully set forth herein.

93.Defendants owed Plaintiff a duty of care to provide safe, supportive, non-discriminatory shelter services consistent with Against Abuse's mission, policies, procedures, and program service commitments.

94.Defendants breached this duty by: failing to provide essential items; failing to check on Plaintiff during a serious illness for three days; failing to inform Plaintiff of available services; failing to provide adequate case management; and failing to take remedial action when Plaintiff reported mistreatment.

95.As a direct and proximate result, Plaintiff suffered physical harm, emotional distress, exacerbation of her medical conditions, and deprivation of services she was entitled to receive.

---

## XII. EIGHTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (AGAINST ALL DEFENDANTS)

96.Plaintiff incorporates by reference each and every allegation contained in Paragraphs 1 through 95 as though fully set forth herein.

97.Defendants' conduct was extreme and outrageous and exceeded all bounds of decency tolerable in a civilized community, including but not limited to:

a.Discriminating against a disabled African American domestic violence survivor in a shelter designed to protect her;

b.Denying essential services, bedding, toiletries, clothing, and transportation while providing them to non-African American residents;

c.Failing to check on Plaintiff during a serious illness for three days;

d.Allowing a tow truck to breach the shelter's security and tow Plaintiff's vehicle, then dismissing Plaintiff's safety concerns;

e.Retaliating against Plaintiff for filing a discrimination grievance by ordering her eviction within one week;

f.Forcing Plaintiff to vacate the shelter while still in her night clothes, in extreme Arizona summer heat, with no vehicle, no food, no money, and nowhere to go;

g.Making false and defamatory statements about Plaintiff to cover up the discriminatory treatment;

h.Re-victimizing a domestic violence survivor who had sought protection from the very organization that was supposed to help her.

98.Defendants acted intentionally or recklessly in causing Plaintiff severe emotional distress.

99.Plaintiff has suffered severe emotional distress including PTSD, anxiety, depression, nightmares, humiliation, loss of dignity, feelings of worthlessness, isolation, sleeplessness, and profound mental anguish.

100.Plaintiff is entitled to compensatory and punitive damages.

---

## XIII. NINTH CAUSE OF ACTION
## RETALIATORY EVICTION
## (AGAINST AGAINST ABUSE AND MARKLEY)
### (A.R.S. § 33-1381)

101.Plaintiff incorporates by reference each and every allegation contained in Paragraphs 1 through 100 as though fully set forth herein.

102.Arizona law prohibits retaliatory eviction, including eviction in retaliation for a tenant or resident's complaint about violations of law or conditions affecting health and safety.

103. On June 10, 2024, Plaintiff engaged in protected conduct by filing a formal grievance about discriminatory treatment at the shelter.

104. Seven days later, on June 17, 2024, Against Abuse evicted Plaintiff from the shelter.

105. The eviction was carried out in retaliation for Plaintiff's protected complaint and constitutes a retaliatory eviction under Arizona law.

106. Plaintiff is entitled to actual damages, statutory remedies, and attorney's fees.

---

## XIV. TENTH CAUSE OF ACTION
## DEFAMATION
## (AGAINST MARKLEY, GRIFFIN, AND DOES 1-10)

107. Plaintiff incorporates by reference each and every allegation contained in Paragraphs 1 through 106 as though fully set forth herein.

108. Following Plaintiff's grievance and eviction, Defendants Markley, Griffin, and others made false and defamatory statements of fact about Plaintiff in written documents and communications.

109. These statements were published to third parties, including other Against Abuse staff, administrators, board members, and potentially government oversight agencies.

110. The statements were false and defamatory — they falsely characterized Plaintiff's behavior, falsely accused her of rule violations, and attempted to justify the discriminatory treatment and retaliatory eviction through fabricated narratives.

111. The statements were made with actual malice or reckless disregard for the truth, as the Defendants knew the statements were false or made them with reckless disregard for their truth or falsity.

112. The defamatory statements harmed Plaintiff's reputation, caused additional emotional distress, and interfered with Plaintiff's ability to access housing and services from other providers.

113. Plaintiff is entitled to compensatory damages, punitive damages, and costs.

---

## XV. ELEVENTH CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY / DUTY OF CARE
## (AGAINST AGAINST ABUSE)

114. Plaintiff incorporates by reference each and every allegation contained in Paragraphs 1 through 113 as though fully set forth herein.

115. Against Abuse, as a non-profit organization operating a domestic violence shelter and accepting vulnerable individuals into its care and custody, owed Plaintiff a heightened duty of care — a fiduciary or quasi-fiduciary duty — to act in Plaintiff's best interests, to protect her safety, and to provide the shelter, services, and support that it holds itself out as providing.

116. Against Abuse breached this duty through the acts and omissions described herein, including but not limited to: discriminatory treatment, failure to provide essential services, negligent security, failure to investigate Plaintiff's complaints, retaliatory eviction, and defamation.

117. Plaintiff is entitled to compensatory and punitive damages.

---

## XVI. DAMAGES

118.As a direct and proximate result of Defendants' acts and omissions, Plaintiff seeks total damages in the amount of **$29,060,000.00**, itemized as follows:

a.Compensatory damages for emotional pain and suffering, PTSD, anxiety, depression, humiliation, loss of dignity, re-victimization, and the blatant disregard for Plaintiff's life and safety as a disabled person in a protected class: **$20,000,000.00**;

b.Punitive damages for Defendants' willful, intentional, malicious, and reckless discriminatory conduct: **$5,000,000.00**;

c.Individual damages against Defendant Pat Griffin for her role in the discriminatory treatment and false written statements: **$1,000,000.00**;

d.Individual damages against Defendant Gabriela Markley for her role in the discrimination, retaliation, and retaliatory eviction: **$1,500,000.00**;

e.Individual damages against Defendant Brianda Gastelum-Hernandez for her role in the discriminatory treatment and failure to provide adequate case management: **$500,000.00**;

f.Individual damages against Defendant Holly (LNU) for her role in the discriminatory treatment and failure to provide adequate advocacy: **$500,000.00**;

g.Individual damages against Doe Defendant "Pat" (Casa Grande staff) for participation in the discriminatory conduct: **$500,000.00**;

h.Damages for loss of vehicle and personal property resulting from Against Abuse's negligent security: **$54,000.00**;

i.Statutory damages under the Fair Housing Act, 42 U.S.C. § 3613;

j.Reasonable attorney's fees, expert fees, and costs of suit pursuant to 42 U.S.C. § 3613(c), 42 U.S.C. § 1988, and A.R.S. § 12-341.01;

k.Pre-judgment and post-judgment interest at the legal rate;

l.Such other and further relief as the Court deems just and equitable.

**TOTAL DAMAGES SOUGHT: $29,060,000.00**

---

## XVII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Dr. Marilyn Wiley respectfully prays for judgment against Defendants, jointly and severally, as follows:

A.Compensatory damages in the amount of $24,054,000.00;

B.Punitive damages in the amount of $5,000,000.00;

C.Individual damages against each individually named Defendant as set forth above;

D.A declaration that Defendants' conduct constituted unlawful discrimination on the basis of race, sex, and disability in violation of the Fair Housing Act and the Arizona Fair Housing Act;

E.A declaration that Plaintiff's eviction was retaliatory and unlawful;

F.An injunction requiring Against Abuse to implement agency-wide quarterly training on Diversity, Equality, and Inclusion in the workplace and in all programs and services offered;

G.An injunction requiring Against Abuse to implement training on etiquette, hospitality, and cleanliness standards at all facilities;

H.An injunction requiring Against Abuse to institute annual independent audits by an outside entity with expertise in budget analysis and financial review to ensure the appropriate use of government grant funding for program services;

I.An injunction requiring Against Abuse to conduct a workforce and employee analysis reviewing hiring procedures, staff qualifications, employee positions, staff availability, work hours, and pay rates;

**J.** An injunction requiring Against Abuse to hire an outside entity to conduct compliance monitoring and auditing to ensure adherence to grant funding requirements;

**K.** An injunction requiring Against Abuse to implement client exit surveys upon program exit to gather qualitative and anecdotal data regarding the program's environment, client treatment, effectiveness, facility cleanliness, and whether clients' needs were met without prejudice, and to use this feedback to incorporate necessary improvements;

**L.** An injunction requiring Against Abuse to upgrade and maintain adequate security systems at all shelter facilities, including but not limited to monitored security gates, surveillance cameras, and protocols to prevent unauthorized access;

**M.** Reasonable attorney's fees, expert fees, and costs of suit pursuant to 42 U.S.C. § 3613(c), 42 U.S.C. § 1988, A.R.S. § 12-341.01, and all other applicable statutes;

**N.** Pre-judgment and post-judgment interest at the legal rate;

**O.** Such other and further relief as the Court deems just and proper.

**TOTAL DAMAGES SOUGHT: $29,060,000.00**

---

## XVIII. JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

---

Respectfully submitted,

Date: 5·6·26

**Dr. Marilyn Wiley, Pro Se Plaintiff**

44900 W Bowln Rd., Apt. 179

Maricopa, Arizona 85139

Telephone: (623) 237-0472

Email: Marilyn@DrMarilynWiley.com

## VERIFICATION

STATE OF ARIZONA

COUNTY OF PINAL

I, Dr. Marilyn Wiley, being duly sworn, state that I am the Plaintiff in this action, that I have read the foregoing Complaint, and that the facts stated therein are true and correct to the best of my knowledge, information, and belief.

**Dr. Marilyn Wiley**

Subscribed and sworn to before me this _____ day of _____, 20___.

**Notary Public**

My Commission Expires: _____